UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH R. REID, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 1:16-cv-01403 |
| v. | (RAMBO, J.) <br> (SAPORITO, M.J.) |
| WARDEN J. EBBERT, et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

This is a *Bivens* action brought jointly by several *pro se* plaintiffs who are incarcerated at USP Lewisburg, located in Union County, Pennsylvania. The action concerns allegations of the widespread use of excessive force against inmates in USP Lewisburg's special management unit ("SMU"), and the falsification of incident reports to manipulate the custody status of the plaintiffs and extend their time in the SMU as a punitive measure.

This matter comes before the Court upon multiple motions by one of the *pro se* plaintiffs, Kenneth Reid, seeking the imposition of a temporary restraining order or preliminary injunction. (Doc. 3; Doc. 21; Doc. 26).

I.  **BACKGROUND**

The complaint in this action has alleged several incidents of excessive force and the falsification of incident reports upon which disciplinary sanctions were based in the SMU at USP Lewisburg. The movant, Kenneth Reid, alleged that a corrections officer named Marr issued a falsified incident report accusing him of assault on December 4, 2015, which resulted in Reid being placed in "hard restraints" and subsequently found guilty of misconduct at a disciplinary hearing. (Doc. 1, at 13). Reid has also alleged that, on that same day, a corrections officer named K. Stugart used excessive force and falsified an incident report in which he accused Reid of assaulting him; Reid further alleged that a second corrections officer named Rummel was present for this incident and participated by "saying [Stugart] should have thrown [Reid] on [his] head on the floor." (Doc. 1, at 46–47). Reid has alleged other, similar incidents involving corrections officers Scott and Lytle that occurred on February 10, 2016, and an incident involving a corrections officer named Bilinski on June 20, 2016. (Doc. 1, at 13–14, 18). The complaint also alleges, in vague and conclusory fashion, that unidentified "staff" or "corrections officers" used excessive force against Reid's co-plaintiffs, inmates Samuel Gaines

and Anthony Burnett, on several occasions between 2013 and 2015.

In his first motion for a temporary restraining order and preliminary injunction, Reid has alleged, in conclusory fashion, that named defendants Rummel, Lytle, Hackenburg, Hackes, K. Stugart, Kepnar, and Lieutenant Scott have "continuously" attempted to retaliate against him for initiating this lawsuit, that they have been "trying to set [him] up," that they have "fabricated and falsified several incident[] reports" in order to deplete his inmate account (presumably to impair his ability to fund litigation activities), that they have verbally harassed him and called him racial slurs, that they have denied him recreation and shower time, and that they've taken his personal property. Reid requests an order enjoining these defendants from such actions, from placing him or any other inmates in either ambulatory or hard restraints, from approaching within thirty feet of him, and from using threatening, "inappropriate," or racist comments in speaking with him. (Doc. 3).

In his second motion for a temporary restraining order and preliminary injunction, Reid has alleged that, on September 5, 2016, defendant Rummel and three non-party corrections officers named Beaver, Missitman, and Stroud used excessive force in attempting to force him to

enter into a cell with a mentally ill cellmate, despite Reid having been assaulted by another, different mentally ill cellmate the day before, and subsequently in subduing Reid and transporting him to a restraint cell. Reid alleges that defendant Rummel and non-party corrections officers Lieutenant Troutman and Lieutenant Scampone threatened him and placed him in restraints that made it difficult for him to breathe and made his hands grow numb and swell up. Reid alleges that he was kept in restraints for four days, and that the tightness of these restraints caused injury to his wrists. Reid further alleges that, on October 10, 2016, non-party correction officer Romig came to his cell and falsely cried out "stop fighting, stop fighting," before spraying pepper spray into Reid's cell, where Reid and his cellmate were lying on their bunks, not fighting. Reid requests an order directing prison staff to provide him with recreation time, showers, and "proper linen clothing," and enjoining defendants Rummel, Hackenburg, and Lytle, and non-party correction officers Romig, B. Beaver, N. Beaver, Missitman, Stroud, and Lieutenant Troutman from working on the same unit where Reid is housed. He further requests an order directing the BOP to transfer him to another prison. (Doc. 21; *see also* Doc. 25).

In his third motion for a temporary restraining order and preliminary injunction, Reid has asserted his subjective expectation that unspecified prison staff will destroy any existing video footage of the incidents that occurred on September 4, September 5, and October 10, 2016. Reid requests an order directing prison staff to preserve this video footage. (Doc. 26). We have declined to construe this as a discovery motion, as the September and October 2016 incidents are not among the events alleged in the plaintiffs' July 2016 complaint. Moreover, Reid does not appear to have served any written discovery requests with respect to the video footage at issue.

## II. DISCUSSION

Preliminary injunctive relief is extraordinary in nature and should issue in only limited circumstances. *See Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994). Moreover, issuance of such relief is at the discretion of the trial judge. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chamberlain*, 145 F. Supp. 2d 621, 625 (M.D. Pa. 2001). In determining whether to grant a motion seeking preliminary injunctive relief, courts in the Third Circuit consider the following four factors: "(1) likelihood of success on the merits; (2)

irreparable harm resulting from a denial of the relief; (3) the harm to the non-moving party if relief is granted; and (4) the public interest." *United States v. Bell*, 238 F. Supp. 2d 696, 699 (M.D. Pa. 2003); *see also Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994) ("The standards for a temporary restraining order are the same as those from a preliminary injunction."). It is the moving party who bears the burden of satisfying these factors. *Bell*, 238 F. Supp. 2d at 699. "Only if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief should the injunction issue." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990).

"[A]n essential prerequisite to the grant of a preliminary injunction is a showing by the movant of irreparable injury *pendente lite* if the relief is not granted."[1] *United States v. Pennsylvania*, 533 F.2d 107, 110 (3d Cir. 1976). A preliminary injunction "may not be used simply to eliminate the possibility of a remote future injury." *Holiday Inns of Am., Inc. v. B&B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969). "[T]he irreparable harm must be actual and imminent, not merely speculative." *Angstadt ex rel. Angstadt v.*

---

[1] *Pendente lite* is a Latin term meaning "while the action is pending" or "[d]uring the proceeding or litigation." *Black's Law Dictionary* 1154 (7th ed. 1999).

*Midd-West Sch.*, 182 F. Supp. 2d 435, 437 (M.D. Pa. 2002). "[M]ore than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat . . . .'" *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (citations omitted). "A preliminary injunction cannot be issued based on past harm. The purpose of a preliminary injunction is to prevent *future* irreparable harm." *Fisher v. Goord*, 981 F. Supp. 140, 168 (W.D.N.Y. 1997) (emphasis in original).

Moreover, "[t]he 'requisite feared injury or harm must be irreparable—not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (quoting *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the *only* way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (emphasis added). "The key word in this consideration is

*irreparable. . . .* The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (emphasis in original).

Reviewing the complaint and the motion papers, it is clear that no immediate irreparable injury is alleged. The facts averred therein are concerned with run-of-the-mill excessive force, due process, and retaliation claims that occurred sporadically over the course of three or four years. The plaintiff's motion papers fail to articulate a presently existing actual threat of irreparable injury, outlining nothing more than the speculative *possibility* of future harm, based upon allegations of past uses of force and generalized allegations of threats and harassment by corrections officers. Such generalized allegations are insufficient to establish a "clear showing of immediate irreparable injury." *See Continental Grp.*, 614 F.2d at 359; *Hendricks v. Hazzard*, No. 2:11-cv-399, 2013 WL 2635729, at *5 (S.D. Ohio June 12, 2013) (finding that allegations of ongoing general harassment and threats, and allegations of specific threats of physical harm that were never acted upon, were insufficient to demonstrate imminent irreparable harm).

Moreover, notwithstanding the plaintiffs' characterization of the use of force described in the complaint and Reid's motion papers as "excessive" and the resultant injuries as "life-threatening," there is nothing to suggest that the plaintiffs' injuries were "irreparable—not merely serious or substantial." *See ECRI*, 809 F.2d at 226; *see also White v. Corr. Med. Servs.*, No. 1:08-CV-277, 2009 WL 529082, at *8 (W.D. Mich. Mar. 2, 2009) (finding conclusory statements regarding plaintiff's alleged injuries and treatment, without evidentiary support, were insufficient to demonstrate irreparable injury).

Moreover, the plaintiffs have an adequate remedy at law for the bodily injuries alleged in this case, both past and potential. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 113 (1983) (damages were adequate remedy at law in 1983 action concerning excessive force). "The availability of adequate monetary damages belies a claim of irreparable injury." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988); *see also In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1145 (3d Cir. 1982) ("[W]e have never upheld an injunction where the claimed injury constituted a . . . loss capable of recoupment in a proper action at law.").

Finally, the requested injunctive relief is sought with respect to several corrections officers who are not parties to this litigation. As the Third Circuit has recognized, "[a] non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought." *Elliott v. Kiesewetter*, 98 F.3d 47, 56 n.5 (3d Cir. 1996); *see also* Fed. R. Civ. P. 65(d)(2); *Scott v. Donald*, 165 U.S. 107, 117 (1897) ("The decree is also objectionable because it enjoins persons not parties to the suit."). Reid has made no showing whatsoever that these non-party corrections officers imposing the conditions of confinement alleged in his motion papers were acting "in active concert or participation" with the named defendants alleged to have participated in the wrongful conduct at issue in the original complaint. Ultimately, with respect to these non-party corrections officers, "the court does not have jurisdiction over the claims raised by [Reid] in his motion for an injunction because those matters are not part of this action." *Jones v. Taylor*, No. 3:12cv487, 2013 WL 1899852, at *2 (M.D. Pa. May 7, 2013).

## III. RECOMMENDATION

Based on the foregoing, it is recommended that plaintiff Reid's motions for a temporary restraining order and preliminary injunction (Doc. 3; Doc. 21; Doc. 26) be **DENIED**.

Dated: November 15, 2016      ***s/ Joseph F. Saporito, Jr.***
                              JOSEPH F. SAPORITO, JR.
                              United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH R. REID, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 1:16-cv-01403 |
| v. | (RAMBO, J.)<br>(SAPORITO, M.J.) |
| WARDEN J. EBBERT, et al., | |
| Defendants. | |

## **NOTICE**

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated November 15, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: November 15, 2016  *s/ Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge